UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **Joseph Ocol**, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**Chicago Teachers Union**, as representative of the class of all chapters and affiliates of the American Federation of Teachers; **American Federation of Teachers**; **Lisa Madigan**, in her official capacity as Attorney General of Illinois; **Andrea R. Waintroob**, **Judy Biggert**, **Gilbert F. O'Brien Jr.**, **Lynne O. Sered**, and **Lara Shayne**, in their official capacities as chair and members of the Illinois Educational Labor Relations Board,<br><br>Defendants. | Case No. 1:18-cv-8038<br><br><br><br><br><br><br><br>**Plaintiff's Class-Action Complaint** |

Joseph Ocol brings this class action on behalf of himself and all others similarly situated, seeking redress for the defendants' violations of his constitutionally protected rights. The defendants have violated Mr. Ocol's rights by forcing him to pay compulsory "fair-share fees" to the Chicago Teachers Union (CTU) and its affiliates as a condition of his employment. *See Janus v. American Federation of State, County, and Municipal Employees, Council 31*, 138 S. Ct. 2448 (2018). Mr. Ocol sues to recover these unconstitutional assessments, and he sues as class representative for everyone who paid fair-share fees to the CTU or any other union affiliated with the American Federation of Teachers (AFT).

The defendants are also violating Mr. Ocol's constitutional rights by forcing him to accept the CTU as his bargaining representative and forbidding him to negotiate his own terms of employment. Just as a teacher cannot be forced to join or financially support a union that he does not support, neither can a teacher be forced to accept an unwanted and untrusted union as his bargaining representative. Mr. Ocol has especially compelling reasons for rejecting the CTU as his "representative." When the CTU held an illegal one-day strike on April 1, 2016, Mr. Ocol declined to participate and reported to work rather than leave his students in the lurch. The CTU responded by expelling Mr. Ocol from union membership—and the union and its members have subjected Mr. Ocol to acts of bullying and persecution for his decision to work during the CTU's illegal strike. A union of this sort cannot be trusted to look after Mr. Ocol's interests in the collective-bargaining process, and Mr. Ocol cannot be forced to accept this entity as his bargaining representative.

## JURISDICTION AND VENUE

1. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 28 U.S.C. § 1367.

2. Venue is proper because a substantial part of the events giving rise to the claims occurred in this judicial district. *See* 28 U.S.C. § 1391(b)(2).

3. Because Mr. Ocol's claims arose in Cook County, the case is properly assigned to the eastern division.

## PARTIES

4. Plaintiff Joseph Ocol resides in Cook County, Illinois.

5. Defendant Chicago Teachers Union (CTU) is a labor union whose offices are located at 1901 West Carroll Avenue, Chicago, Illinois 60612.

6. Defendant American Federation of Teachers (AFT) is a labor union whose headquarters are located at 555 New Jersey Avenue, N.W. Washington, D.C. 20001. The CTU is an affiliate of the AFT.

7. Defendant Lisa Madigan is Attorney General of Illinois. Her office is at 100 West Randolph Street, Chicago, Illinois 60601. She is charged with enforcing the laws of Illinois, including 115 ILCS 5/11 and 115 ILCS 5/3(b), which Mr. Ocol is challenging as unconstitutional. She is sued in her official capacity.

8. Andrea R. Waintroob, Judy Biggert, Gilbert F. O'Brien Jr., Lynne O. Sered, and Lara Shayne are chair and members of the Illinois Educational Labor Relations Board. Their offices are located at 160 North LaSalle Street, Suite N-400, Chicago, Illinois 60601-3103. They are charged with enforcing the provisions of the Illinois Educational Labor Relations Act, including 115 ILCS 5/11 and 115 ILCS 5/3(b), which Mr. Ocol is challenging as unconstitutional. They are sued in their official capacity.

## CLAIM NO. 1—REFUND OF FAIR-SHARE FEES

9. Mr. Ocol is a math teacher at Earle STEM Elementary School in the Chicago Public Schools.

10. Mr. Ocol also coaches the chess teams at Earle STEM Elementary School. He coaches a girls team as well as a boys-and-girls team, and his teams include students from the second through the eighth grades. He has also organized the first-ever school chess mentoring club, which includes students from pre-K through eighth grade.

11. Although Mr. Ocol is paid a limited stipend for the time he spends after school as chess coach, most of the time that he spends as chess coach and chess teacher is not paid for. He spends four days a week after school coaching the chess team from 4:00 P.M. to 6:00 P.M., and he also devotes his Saturdays and Sundays to the chess

team when there is a tournament on those days. Mr. Ocol provides food, books, and rewards for the chess team out of his own pocket.

12.   The girls chess team that Mr. Ocol coaches has won numerous tournaments and was invited to meet President Barack Obama in October 2016.

13.   Recent budget cuts in the Chicago Public Schools have hit Mr. Ocol's chess teams, and generous individuals coordinated with the school to set up a GoFundMe page to make up for the funds lost in the latest round of budget cuts. *See* https://www.gofundme.com/chess-team (last visited on December 6, 2018).

14.   Mr. Ocol was a member of the Chicago Teachers Union (CTU) from 2005 until 2016.

15.   On April 1, 2016, the Chicago Teachers Union held an illegal one-day strike while its members were under contract with the school district.

16.   Mr. Ocol refused to participate in this illegal strike and reported to work.

17.   Mr. Ocol decided to work rather than strike on April 1, 2016, for several reasons. First, many of Mr. Ocol's students live below the poverty line and in dangerous neighborhoods, and their safety would be endangered if schools were closed for the day. Second, the parents of these schoolchildren would need to skip work or arrange for childcare if the schools were closed, which imposes an unwelcome cost on many families who are already struggling financially. Third, the CTU's strike was illegal and Mr. Ocol did not want to participate in an illegal activity. Finally, Mr. Ocol did not believe that the union's demands or its decision to strike would benefit the students. Higher pay and increased benefits for teachers does not provide any inherent benefit to students, and the strike harmed Mr. Ocol's students by depriving them of the day's lessons and forcing their parents to skip work or arrange for childcare at their own expense.

18.   After the strike, the CTU demanded that Mr. Ocol surrender the pay he received for working on April 1, 2016, or face expulsion from the union.

19.   The CTU also demanded that Mr. Ocol appear for a "hearing" that the union had scheduled for June 6, 2016, where Mr. Ocol was to respond to the "charges" that the CTU had levelled against him for refusing to participate in the union's illegal strike.

20.   Mr. Ocol declined to attend the hearing on June 6, 2016, because it conflicted with a practice session that he had scheduled for his chess team.

21.   The CTU then expelled Mr. Ocol from union membership in September of 2016. But it continued to take "fair-share fees" from his paycheck until the Supreme Court issued its ruling in *Janus v. American Federation of State, County, and Municipal Employees, Council 31*, 138 S. Ct. 2448 (2018).

22.   For the next eight months after the CTU expelled Mr. Ocol from membership, the amount of "fair-share fees" that the union garnished from his paycheck was higher than the membership dues that he had been charged as a union member. *But see* 115 ILCS 5/11 ("The exclusive representative shall certify to the employer an amount not to exceed the dues uniformly required of members which shall constitute each non member employee's fair share fee."). On the ninth month after Mr. Ocol's explusion from the union, the amount of fair-share fees was reduced.

23.   The law of Illinois and the collective-bargaining agreement negotiated by the CTU compelled Mr. Ocol pay "fair-share fees" to the union after the union expelled him from membership. *See* 115 ILCS 5/11 (allowing collective-bargaining agreements to compel "fair-share fees" from non-union members) (attached as Exhibit 1); Agreement Between The Board of Education of the City of Chicago and Chicago Teachers Union Local 1, American Federation of Teachers, AFL-CIO, article 1-8.1 (compelling all school employees to pay either union dues or "fair-share fees") (attached as Exhibit 2).

24.   This compelled subsidy that the Chicago Teachers Union imposed on Mr. Ocol and his fellow non-union members violated their constitutional rights. *See Janus*

*v. American Federation of State, County, and Municipal Employees, Council 31*, 138 S. Ct. 2448 (2018).

25.   The CTU's imposition of a "fair-share fee" that exceeded that amount that Mr. Ocol had been charged as a full member of the union also violated Illinois law. *See* 115 ILCS 5/11 ("The exclusive representative shall certify to the employer *an amount not to exceed the dues uniformly required of members* which shall constitute each non member employee's fair share fee.") (emphasis added).

26.   The Supreme Court's ruling in *Janus* is retroactive. *See Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 96 (1993) ("[A] rule of federal law, once announced and applied to the parties to the controversy, must be given full retroactive effect by all courts adjudicating federal law.").

27.   The CTU was acting under color of state law by imposing and collecting these "fair-share fees" from non-union members. *See* 115 ILCS 5/11; *Lugar v. Edmondson Oil Co. Inc.*, 457 U.S. 922 (1982).

28.   Mr. Ocol and his fellow class members are therefore entitled to a refund of the money that was forcibly taken from them in violation of their constitutionally protected rights. *See* 42 U.S.C. § 1983.

29.   The affirmative defense of qualified immunity is unavailable to private entities such as labor unions. *See Wyatt v. Cole*, 504 U.S. 158, 161 (1992).

30.   Even if the union could assert an affirmative defense such as qualified immunity or "good faith," those defenses can provide only an immunity from money damages, and they do not confer immunity when a plaintiff seeks equitable monetary relief such as restitution or unjust enrichment, which Mr. Ocol is asserting here.

31.   Finally, even if this Court were to allow the union to assert a "good faith" defense to Mr. Ocol's section 1983 claims, the union must *still* show that it complied with pre-*Janus* case law before it can escape liability under section 1983. *See Abood v. Detroit Board of Education*, 431 U.S. 209, 239–40 (1977). Under *Abood*, public-

employee unions may require non-members to pay only for union activities that were non-ideological, and they were forbidden to require an employee to "contribute to the support of an ideological cause he may oppose as a condition of holding a job." *Abood*, 431 U.S. at 235; *see also R.J. Reynolds Tobacco Co. v. Shewry*, 423 F.3d 906, 916 (9th Cir. 2005). So the union must, at the very least, prove that it complied with *Abood* before it can establish a "good faith" defense under section 1983.

32.   The CTU has committed the torts of conversion and trespass to chattels by appropriating Mr. Ocol's money without his consent. The CTU cannot defend its tortious conduct by relying on 115 ILCS 5/11, because this statute is unconstitutional and unconstitutional statutes cannot confer immunity on tortious conduct.

33.   The collective-bargaining agreement negotiated by the Chicago Teachers Union promises that the union "shall indemnify and hold harmless" the school district for any liability that arises out of its collection of "fair-share fees." *See* Agreement Between The Board of Education of the City of Chicago and Chicago Teachers Union Local 1, American Federation of Teachers, AFL-CIO, article 1-8.7 (attached as Exhibit 2). The collective-bargaining agreement further provides that the CTU "shall be responsible for the attorney's fees of any attorney for the BOARD." *Id*.

34.   Mr. Ocol is suing on behalf of all non-union employees who were forced to pay "fair-share fees" to the CTU or any other affiliate of the American Federation of Teachers as a condition of employment. The class includes everyone who has ever fallen within this definition, including former or retired school employees, and it includes anyone who comes within the class definition at any time before the conclusion of this action.

35.   Mr. Ocol has Article III standing to bring these claims. He has suffered injury in fact because he was forced to pay money to the union against his will as a condition of employment. The injury was caused by the unconstitutional behavior of

the defendants, and the injury will be redressed by a refund of the money that the union unconstitutionally extracted from Mr. Ocol and his fellow class members.

## CLAIM NO. 2—RIGHT TO NEGOTIATE OUTSIDE THE UNION

36.   Even though Mr. Ocol is not a member of the Chicago Teachers Union, the law of Illinois and the CTU's collective-bargaining agreement prevent Mr. Ocol from negotiating his own terms of employment with his school district. *See* 115 ILCS 5/3(b) (attached as Exhibit 1). Mr. Ocol remains bound to the terms of employment negotiated by a union that he does not belong to and that expelled him from membership—and he *must* accept this union as his exclusive representative whether he likes it or not.

37.   Mr. Ocol does not and cannot trust the Chicago Teachers Union to look after his interests in the collective-bargaining process. The union expelled Mr. Ocol from membership in 2016 when he refused to participate in the CTU's illegal one-day strike, which deprives Mr. Ocol of any vote or voice in collective-bargaining matters.

38.   Mr. Ocol also does not want to be represented by a union that breaks the law and organizes an illegal strike while he and his fellow teachers are under contract to work—and that ostracizes and retaliates against those who obeyed the law and reported to work as required by their contract.

39.   Yet the law of Illinois compels Mr. Ocol to accept this entity as his bargaining representative, even though the union will not allow Mr. Ocol to vote on its decisions and many of its members are trying to Mr. Ocol's life and working conditions unpleasant.

40.   A regime that compels non-union teachers to accept a hostile or unwanted union as their exclusive bargaining representative violates the First Amendment.

41.   Although the Supreme Court has never gone so far as to hold that the Speech Clause requires public employers to permit non-union employees to negotiate outside the union, the *Janus* opinion repeatedly acknowledges that exclusive union bargaining abridges the associational freedom of individual employees. *See Janus*, No. 16-1466, slip op. at 2 ("Designating a union as the employees' exclusive representative substantially restricts the rights of individual employees."); *id.*, slip op. at 33 ("It is also not disputed [in *Janus*] that the State may require that a union serve as exclusive bargaining agent for its employees—itself a significant impingement on associational freedoms that would not be tolerated in other contexts."). *Janus* also recognizes that collective bargaining in public education requires the union to stake out positions on controversial political issues—including merit pay for teachers, the role of seniority and tenure, how teachers should be evaluated, and political issues such as climate change and LGBT rights. *See id.*, slip op. at 29–31. So it is inevitable that individual teachers will disapprove of the bargaining positions adopted by the exclusive representative, even when the representative is legally required to act on their behalf. Forcing a non-union teacher to accept the representation of an unwanted union—and forcing that non-union teacher to accept the union-negotiated terms of employment—violates the freedom of association protected by the First Amendment.

42.   It is also wrong to assume that collective bargaining confers offsetting benefits on dissident teachers by increasing their salaries beyond what they would earn in a non-union teaching market. Collective-bargaining agreements force teachers into a union-imposed salary structure that benefits some teachers at the expense of others. One of the most perverse features of teacher collective bargaining is the insistence on a single salary schedule for teachers regardless of subject matter. There is a well-documented nationwide shortage of teachers in science, technology, engineering, and mathematics (STEM). *See, e.g.*, Dan Goldhaber, John Krieg, Roddy Theobald, and Nate Brown, *Refueling the STEM and Special Education Teacher Pipelines*, Phi Beta

Kappan at 56–62 (December 2015 – January 2016) (attached as Exhibit 3). And the reason for this shortage is that college graduates with degrees in STEM fields have more lucrative opportunities in the private sector than those who graduate with degrees in fields such as elementary education. Schools must therefore pay higher salaries to STEM teachers to induce them to accept jobs in the teaching profession—just as universities must pay higher salaries to law professors and business-school professors. But collective bargaining requires teachers to be paid the same across subject matter, which benefits elementary-education instructors at the expense of math teachers such as Mr. Ocol.

43.    Collective bargaining also empowers the union to impose a salary structure that benefits long-tenured incumbent teachers—who often hold leadership positions in the local union and wield the most power and influence over collective-bargaining matters—at the expense of entry-level teachers and lateral hires. Collective-bargaining agreements require school districts to pay exceedingly low salaries to entry-level teachers—no matter how talented and no matter how impressive their academic backgrounds or previous careers may have been. This deters talented and capable individuals from entering the teaching profession and shields incumbent teachers from competition. And the future entry-level teachers that the union is supposedly "representing" are not even members of the bargaining unit at the time these agreements are made—so they have no vote and no say in the terms of employment that the union negotiates for them.

44.    The CTU's collective-bargaining agreements also violate the antitrust laws. The provisions in collective-bargaining agreements that command uniform salaries for teachers regardless of subject matter are anti-competitive, and they cannot survive the rule of reason or any other standard of review. They have also exacerbated the nationwide shortage of STEM teachers by compelling them to accept salaries equal to those of elementary-education instructors.

45. The CTU has also violated the antitrust laws by compelling entry-level teachers to accept exceedingly low salaries negotiated by a bargaining unit that they do not belong to—and by forbidding entry-level teachers to negotiate better deals with the school district. This pernicious and anti-competitive feature of collective bargaining has deterred talented individuals from entering the teaching profession. It has also contributed to the nationwide shortage of STEM teachers by forbidding school districts to offer more attractive compensation packages that could entice math and science professionals away from the private sector.

46. The so-called labor exemption that the Supreme Court has read into the antitrust laws protects only the collective-bargaining activities of private-sector unions, not public-employee unions such as the CTU. The Supreme Court has made clear that the labor exemption is derived from the federal labor statutes, which protect collective bargaining only when it occurs in the private sector. *See* 29 U.S.C. § 152(2)–(3) (excluding public employers and public employees from the National Labor Relations Act); *Brown v. Pro Football Inc.*, 518 U.S. 231 (1996) ("The Court has implied this [labor] exemption from federal labor statutes, which set forth a national labor policy favoring free *and private* collective bargaining.") (emphasis added). There is no basis in any federal labor statute for exempting public-employee unions from the antitrust laws, as federal labor law is entirely agnostic on whether or to what extent public employees should be allowed to unionize.

47. Even if public-employee unions could assert immunity from the antitrust laws in other contexts, there is no reason to interpret the antitrust laws in a manner that exempts collective bargaining for public-school teachers. The teaching profession is especially ill-suited for collective bargaining because there are vast differences among individual teachers in ability, skills, work ethic, subject-matter expertise, educational backgrounds, and job opportunities. This aggravates the anti-competitive

harms that arise when collective-bargaining agreements compensate teachers according to union-imposed pay scales rather than the laws of supply and demand.

48.   Mr. Ocol is suing on behalf of a class of all non-union teachers who want to negotiate their own terms of employment outside the CTU's collective-bargaining agreements. The class includes anyone who comes within this definition before the conclusion of this action.

## CAUSES OF ACTION

49.   Mr. Ocol is suing all of the defendants under 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. § 2201, each of which supplies a cause of action for the individual and class-wide relief that they are requesting.

50.   Mr. Ocol is also suing the union defendants under the federal antitrust laws, as well as the state-law actions of conversion, trespass to chattels, replevin, unjust enrichment, restitution, and any other legal or equitable cause of action that offers relief for this unlawful seizure of his personal property. Mr. Ocol invokes the supplemental jurisdiction of this court over those state-law claims. *See* 28 U.S.C. § 1367.

## DEMAND FOR RELIEF—REFUND OF FAIR-SHARE FEES

51.   Mr. Ocol respectfully requests that the court:

    a.   certify a plaintiff class of all individuals who quit or refused to join the Chicago Teachers Union or any other affiliate of the American Federation of Teachers, but were nonetheless compelled to pay "fair-share fees" to those unions as condition of their employment;

    b.   certify a defendant class of all chapters and affiliates of the American Federation of Teachers;

c.     declare that Mr. Ocol and his fellow class members have a constitutional right not to have their wages garnished or redirected by a public-employee union without their affirmative, written, and freely given consent;

d.     declare that state tort law protects the right of Mr. Ocol and his fellow class members not to have their wages garnished or redirected by a public-employee union without their affirmative, written, and freely given consent, and that any state or federal law or collective-bargaining agreement that purports to override these protections of state tort law—or that compels public employees to consent the garnishment of their wages by a union as a condition of their employment—is unconstitutional and without legal effect;

e.     declare 115 ILCS 5/11 unconstitutional because it allows public-employee unions to extract "fair-share fees" from non-union members;

f.     declare that all provisions in collective-bargaining agreements that compel Mr. Ocol or his fellow class members to pay "fair-share fees" to a union violate the Constitution;

g.     order the Chicago Teachers Union, the American Federation of Teachers, and every affiliate and chapter or the American Federation of Teachers, to refund any and all "fair-share fees" that they unconstitutionally extracted from Mr. Ocol and his fellow class members, along with pre-judgment and post-judgment interest;

h.     order the Chicago Teachers Union, the American Federation of Teachers, and every affiliate and chapter or the American Federation of Teachers, to refund any and all "fair-share fees" that were spent on political and ideological expenditures, in violation of *Abood* and pre-*Janus* cases, along with pre-judgment and post-judgment interest;

i.    permanently enjoin the Chicago Teachers Union, the American Federation of Teachers, and every affiliate and chapter or the American Federation of Teachers, as well as their officers, agents, servants, employees, attorneys, and any other person or entity in active concert or participation with them, from taking or redirecting any type of money from Mr. Ocol and his fellow non-union members without first obtaining their affirmative, written, and freely given consent;

j.    permanently enjoin all of the defendants, along with their officers, agents, servants, employees, attorneys, and any other person or entity in active concert or participation with them, from enforcing 115 ILCS 5/11, or any other provision of Illinois law or any provision of a collective-bargaining agreement or any order of the Illinois Educational Labor Relations Board that requires the payment of money as a consequence for exercising one's constitutional right not to join or financially support a public-employee union, regardless of whether that compelled payment of money is received by the union or diverted to a third-party organization;

k.    award costs and attorneys' fees under 42 U.S.C. § 1988;

l.    grant all other relief that the Court deems just, proper, or equitable.

## DEMAND FOR RELIEF—
## RIGHT TO NEGOTIATE OUTSIDE THE UNION

52.  Mr. Ocol respectfully requests that the court:

a.    certify a class of all non-union teachers who want to negotiate their own terms of employment apart from the collective-bargaining agreements negotiated by the Chicago Teachers Union or any other affiliate of the American Federation of Teachers;

b.    declare that Mr. Ocol and his fellow class members have a constitutional right to reject the representation of a union and negotiate their own salaries and terms of employment with public employers;

c.    declare 115 ILCS 5/3(b) unconstitutional, along with any other law that prevents Mr. Ocol or his fellow class members from rejecting the a teacher union's representation and negotiating their own salaries and terms of employment with public-school employers, and permanently enjoin the defendants, along with their officers, agents, servants, employees, attorneys, and any other person or entity in active concert or participation with them, from enforcing those unconstitutional state laws;

d.    declare unconstitutional any provision in any collective-bargaining agreement that prohibits a public employer from negotiating outside the union with non-union employees or non-union job applicants, and permanently enjoin the defendants, along with their officers, agents, servants, employees, attorneys, and any other person or entity in active concert or participation with them, from enforcing or complying with any such provision in a collective-bargaining agreement;

e.    declare that the collective-bargaining agreements negotiated by the Chicago Teachers Union or any affiliate of the American Federation of Teachers are subject to federal antitrust scrutiny, and declare that provisions in collective-bargaining agreements that compel uniform pay scales across subject matter and that pull down the salaries of new entrants in an effort to benefit long-tenured incumbent teachers at the school district violate the antitrust laws;

f.    order the Chicago Teachers Union and the affiliates of the American Federation of Teachers to pay treble damages to math and science

teachers and other teachers in high-demand fields whose salaries have been pulled down by the union's insistence on a uniform pay scale across subject matter;

g.    order the Chicago Teachers Union and the affiliates of the American Federation of Teachers to pay treble damages to entry-level teachers whose salaries were pulled down by union-negotiated pay scales that benefit incumbent teachers at the expense of new entrants;

h.    award costs and attorneys' fees;

i.    grant all other relief that the Court deems just, proper, or equitable.

Respectfully submitted.

JONATHAN F. MITCHELL*
Mitchell Law PLLC
106 East Sixth Street, Suite 900
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

*Lead Counsel for Plaintiff and
the Proposed Class*

* *pro hac vice* application pending

Dated: December 6, 2018

 /s/ Norman Rifkind 
NORMAN RIFKIND
Law Office of Norman Rifkind
100 East Huron Street #1306
Chicago, Illinois 60611
(847) 372-4747
norman@rifslaw.com

*Local Counsel for Plaintiff and
the Proposed Class*